PROPOSED BYPASS

SKILLERN TRACT.

GASTON AVE.

///// ACQUISITION

▩▩▩ SURPLUS

**Michael Joe SELMAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–85–01377–CR.**

Court of Appeals of Texas,
Dallas.

Jan. 22, 1987.

Rehearing Denied Feb. 18, 1987.

John H. Hagler, Dallas, for appellant.

Constance M. Maher, Asst. Dist. Atty., Dallas, for appellee.

Before VANCE [1], McCLUNG and McCRAW, JJ.

## ON MOTION FOR REHEARING

McCLUNG, Justice.

This Court's opinion of December 2, 1986 is withdrawn and this one is substituted therefor.

Michael Joe Selman appeals his conviction for criminal conspiracy to commit capital murder. Punishment was assessed by the jury at twenty-five years confinement. Selman contends that 1) the evidence is insufficient to corroborate the accomplice testimony and support the conviction, 2) the jury instruction for the co-defendant naming Selman as an accomplice as a matter of law constitutes reversible error, and 3) the trial court improperly admitted evidence of an extraneous offense. Because we hold that the jury instructions for the co-defendant constituted an impermissible comment on the evidence in Selman's case, we reverse the judgment of the trial court.

Selman's case was consolidated for trial with that of Tommy Barnes who has appealed his conviction for conspiracy to commit capital murder separately.

The record shows that on January 6, 1985, Selman met his co-defendant, Tommy Barnes, along with Austin Plunkett and Paul Kosmach at the residence of Tommy Barnes. Candice Messick and others were also present. After dinner, the men at the gathering walked outside and agreed that Danny Doyle needed to be killed. Doyle was found dead later that night.

Austin Plunkett testified to the plan and to the actual means used to murder the victim. The conspirators formed the plot following dinner on January 6th. Paul Kosmach agreed to do the killing and procured a knife to perform the task. The

---

1. Justice John C. Vance concurred in this opinion prior to his retirement on December 31, 1986.

others then attempted to contact Doyle to set up a meeting. Later that evening, Kosmach left the house with Doyle who had coincidentally stopped by Barnes' home. Kosmach rendezvoused with the other conspirators later that evening at the parking lot of a grocery store.

Candice Messick, Selman's girlfriend, testified that on January 6th, a group met for dinner at Barnes' house. Following dinner, Selman and the other men retired to the backyard. Messick testified that later that night the conspirators went to a grocery store parking lot to await Kosmach.

Roger Babineau and William Hambleton testified to their activities in planning to set up a methamphetamine lab for Selman and Doyle. According to Hambleton, Selman said that it was necessary to kill Doyle because of fear that he would "rip them off."

Appellant's first three points of error allege that there was insufficient evidence to corroborate the accomplice witnesses' testimony regarding an agreement, overt act, and remuneration—all necessary elements for the conspiracy to commit capital murder.

The elements of conspiracy are an agreement to engage in criminal conduct and the performance of an overt act in furtherance thereof. Tex. Penal Code Ann. § 15.02(a) (Vernon 1984). *See also, McCann v. State,* 606 S.W.2d 897, 898 (Tex.Crim.App.1980). Thus, both the agreement and an overt act must be proven.

The State demonstrated through the testimony of Plunkett that at the backyard meeting on January 6th, plans were made to kill Doyle. Overt acts in furtherance of these plans were carried out later that night. The trial court in the jury charge identified Plunkett, Messick, Hambleton, and Babineau as accomplices. The sufficiency of the evidence is measured by the charge that was given. *Boozer v. State,* 717 S.W.2d 608, 610 (Tex.Crim.App.1984). Since Plunkett was an accomplice, the law requires that "a conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense

committed; and the corroboration is not sufficient if it merely shows the commission of the offense." Tex. Code Crim.Proc. Ann. art. 38.14 (Vernon 1980).

■ The test to apply in determining sufficiency of the corroboration is to eliminate from consideration the testimony of the accomplice witness and then examine the testimony of the other witnesses to ascertain if there is inculpatory evidence which tends to connect the accused with the commission of the offense. *Cruz v. State,* 690 S.W.2d 246, 250 (Tex.Crim.App. 1985). In applying this test, the testimony of one accomplice cannot be used to corroborate that of another. *Caraway v. State,* 550 S.W.2d 699, 702 (Tex.Crim.App.1977). This test does not require, however, that the corroboration directly link the defendant with the crime or that it be sufficient in itself to establish guilt. *Richardson v. State,* 700 S.W.2d 591, 594 (Tex.Crim.App. 1985). It need only make the accomplice's testimony more likely than not. *Passmore v. State,* 617 S.W.2d 682, 684 (Tex.Crim. App.1981); *Eckert v. State,* 623 S.W.2d 359, 361 (Tex.Crim.App.1981).

In this case, Barnes' son testified that Selman and the other conspirators met at Barnes' house for dinner one night and then went to the backyard. Doyle's son identified the jewelry, gun, and briefcase stolen from Doyle at the time of his death. Selman's fingerprint was found on property stolen from the victim. Selman admitted to having dinner with the other conspirators, having rented a motel room in the city the night of the murder, having been in possession of the stolen property, and having made arrangements to fence the jewelry. Hidden papers stolen from Doyle and hinges from the burnt briefcase were found corroborating Hambleton's testimony that Selman directed him to dispose of the property.

■ We hold that the non-accomplice testimony in this case made the accomplices' testimony more likely than not and, therefore, was sufficient. It was not necessary specifically to corroborate that the murder was for remuneration. *Cf. Holladay v.*

*State,* 709 S.W.2d 194 (Tex.Crim.App.1986). If corroborating testimony was required to be sufficient in itself to establish the guilt of the accused, the testimony of the accomplice would be of no value. *Pinson v. State,* 598 S.W.2d 299, 302 (Tex.Crim.App. 1980). We, therefore, overrule appellant's first three points of error.

Selman also argues that the evidence is insufficient to support the conviction because the murder did not occur through the same means by which it was planned. In Barnes' backyard it was agreed that Kosmach would do the actual killing by cutting the victim's throat with the knife. Intricate plans were made on how to lure the victim to the right spot. However, the victim surprised the group by coming to Barnes' house. Kosmach took advantage of the opportunity and asked the victim for a ride. He later shot the victim four times. Thus, Selman argues, Kosmach acted independently.

■ As has been already noted, the elements of conspiracy are an agreement to engage in criminal conduct and the performance of an overt act in furtherance thereof. Tex. Penal Code Ann. § 15.02(a) (Vernon 1974). We have demonstrated that the agreement to kill was made. The overt acts in furtherance thereof included the procurement of a knife with which to commit the crime and attempts by the conspirators to lure the victim to the appropriate spot. It was not necessary for the murder to have actually occurred. *See, McCann v. State,* 606 S.W.2d 897, 898 (Tex.Crim.App.1980). Point of error number four is overruled.

In his fifth point of error, Selman argues that the jury instructions for his co-defendant which name Selman as an accomplice as a matter of law constitutes reversible error. We agree. Barnes and Selman were tried together despite objections and motions to sever by both counsel. Selman testified in his own behalf while Barnes did not. Barnes insisted that in his case the jury be instructed that Selman's testimony required corroboration because Selman was an accomplice as a matter of law. This was his right. *Crew v. State,* 675 S.W.2d 787, 788 (Tex.App.—Dallas 1984, pet. ref'd). Selman contends that the charge in Barnes' case prejudiced his own case.

■ Article 38.05 of the Texas Code of Criminal Procedure provides that the judge shall not, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case. Selman contends that Barnes' jury charge was a prejudicial comment by the judge. In order for remarks by a judge to constitute a violation of Article 38.05, a benefit to the State or an injury to the accused must be found. *Garcia v. State,* 427 S.W.2d 897, 900 (Tex.Crim. App.1968); *Joshlin v. State,* 488 S.W.2d 773, 776 (Tex.Crim.App.1972); *Pilcher v. State,* 503 S.W.2d 547, 551 (Tex.Crim.App. 1974). We hold that Selman was injured in this case when the jury that was to determine his guilt or innocence heard the trial judge describe him as an accomplice.

Art. 36.14 of the Texas Code of Criminal Procedure:

> [T]he judge shall, before the argument begins, deliver to the jury ... a written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury.

To say that no error occurred because the complained of instruction was not included under Selman's cause number ignores the practicality of the situation. One jury received and considered the jury charges for both Barnes and Selman. In *Talkington v. State,* 682 S.W.2d 674, 675 (Tex.App.—Eastland 1984, pet ref'd), the court found that the trial court violated article 36.14 by describing the complainant in a rape case as the "victim" in the jury charge. Surely, describing the defendant as an accomplice and then defining an accomplice as "one connected with a crime charged by an unlawful act or omission on their part" is even more prejudicial to the defendant. We hold that the jury charge in his co-defendant's case constitutes reversible error as to Selman.

Finally, Selman contends that the trial court erred in allowing evidence regarding an extraneous offense involving the establishment of an illegal drug laboratory. Evidently, the victim was murdered as part of the preliminary business arrangement for this drug lab. During the "drug bust", the victim's property was recovered thus providing the clues which "broke" the murder case. Selman argues that this evidence constitutes an inadmissible extraneous offense. Testimony regarding the drug lab, however, may be used to show the motive behind the actions of the conspirators. Evidence of motive is admissible even if it would show commission of a collateral offense. *Russell v. State,* 598 S.W.2d 238, 250 (Tex.Crim.App.) *cert. denied,* 449 U.S. 1003, 101 S.Ct. 544, 66 L.Ed.2d 300 (1980). The motive demonstrated by the testimony of the drug lab is the motive for the conspiracy. Thus, evidence of the lab is admissible as a detail of the whole scheme. *Woolls v. State,* 665 S.W.2d 455, 471 (Tex.Crim.App.1983). This killing was not committed in a vacuum; the evidence was properly admitted to demonstrate what motivated the conspirators, including Selman, to act. We, therefore, overrule appellant's sixth point of error.

For the reasons given, we reverse the judgment of the trial court, and remand this case for further proceedings.