

# NUMBERS 13-13-00639-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**EDWARD LEE JAYCOX,**                                                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                    **Appellee.**

---

### On appeal from the 24th District Court
### of Calhoun County, Texas.

---

## MEMORANDUM OPINION

### Before Justices Benavides, Perkes, and Longoria
### Memorandum Opinion by Justice Perkes

Appellant Edward Lee Jaycox was indicted for the offense of aggravated sexual assault, a first degree felony, with a habitual-felony offender enhancement. *See* TEX. PENAL CODE ANN. §§ 12.42(d), 22.021(e) (West, Westlaw through Ch. 46 2015 R.S.). A jury found appellant guilty and assessed punishment at life imprisonment. By three issues, appellant argues the trial court erred by overruling his objections to: (1) the

prosecutor's use of the word "victim"; (2) statements made by the complainant to a law enforcement officer; and (3) a nurse's testimony concerning whether the complainant's injuries were consistent with a sexual assault. We affirm.

## I. BACKGROUND

The complainant M.S.[1] testified that she was walking home from work at 12:30 in the morning when appellant slowed his vehicle and asked if she wanted a ride home. Since appellant had given her a ride on prior occasions, M.S. accepted the offer. Appellant stopped to get gas, which M.S. agreed to purchase for him. Appellant then drove to a trailer park and drank some beer with friends for about an hour. During this time, M.S. told appellant multiple times that she needed to go home because she was scheduled to work the morning shift. Appellant left with M.S. to pick up his sister and another individual before returning to the trailer park.

Appellant then told M.S. he needed to go to his house, located in a separate trailer park, to "pick up something." They arrived at appellant's trailer around 3:00 a.m., and appellant told M.S. to come inside because "it's going to take a little while." As M.S. was sitting on the bed, appellant attempted to kiss her. She kicked him and tried to get away. Appellant then pushed her down and started choking her. Appellant removed M.S.'s clothes and threatened to kill her if she continued to fight him. Appellant then put his penis in M.S.'s mouth and his fingers in her vagina. At this point, M.S. was crying and appellant put his hand over her mouth. Appellant then inserted his penis in her vagina. M.S. stated that this "went on for hours it seemed." Afterward, appellant told M.S. to give

---

[1] Although the complainant's identity was not concealed at trial, we use only her initials here to protect her identity.

2

him "hickies" on his neck to make it appear consensual, and M.S. complied. M.S. left her sports bra behind and scratched him on his face "to prove what had happened." M.S. received bruises and scratches on her neck, arms, legs, and backside as a result of the sexual assault.

Appellant drove M.S. back to work that morning and she immediately informed a co-worker that appellant had sexually assaulted her. M.S. called the police to report the assault. A sexual assault nurse examiner ("SANE" nurse) examined M.S. The SANE nurse testified at trial regarding M.S.'s injuries, which included bruising, scratches, and injuries to her labia and hymen.

Appellant spoke to an investigating officer and admitted to having intercourse with M.S., but explained "she [was] old enough" and "the girl gave in." Photographs showing scratches and bruises on appellant were admitted at trial.

The jury found appellant guilty of aggravated sexual assault and sentenced him to life in prison. This appeal followed.

## II. USE OF THE WORD "VICTIM"

By his first issue, appellant argues "the trial court erred by allowing the burden of proof to switch to the defense." Specifically, appellant maintains that the trial court erred in overruling appellant's objection to the State's use of the word "victim" to describe M.S.

### A. Standard of Review

We review a trial court's evidentiary rulings under an abuse of discretion standard. *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). We will not disturb the ruling if it "was within the zone of reasonable disagreement and was correct under any

3

theory of law applicable to the case." *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007); *see also Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002) ("[T]he appellate court must uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case.").

## B. Discussion

Detective Rangnow with the Port Lavaca Police Department investigated M.S.'s sexual assault allegation. During the State's direct examination, he was asked the following: "you got a call then from the police department to respond to the department because there was a victim there who was . . ." Appellant's counsel objected "to the use of the word victim," arguing that "[i]t shifts the burden of proof at this phase of the trial to my client to disprove guilt." The trial court overruled the objection and granted a running objection. The prosecutor continued, "A victim there who reported that she had been sexually assaulted; is that correct?" Detective Rangnow responded "That is correct." The prosecutor referred to M.S. as the victim nine times when questioning witnesses during the trial.

A trial court's reference to a complainant as a victim in the jury charge has been held to be an improper comment on the weight of the evidence. *See Talkington v. State*, 682 S.W.2d 674, 674–75 (Tex. App.—Eastland 1984, pet. ref'd); *Veteto v. State*, 8 S.W.3d 805, 816–17 (Tex. App.—Waco 2000, pet. ref'd). However, a prosecutor's use of the word victim, while it assumes a crime has been committed, "would not surprise a reasonable juror, nor would the prosecutor's use of the word . . . generally be understood

4

as anything other than the contention of the prosecution." *Weatherly v. State*, 283 S.W.3d 481, 486 (Tex. App.—Beaumont 2009, pet. ref'd).

Here, the trial court did not refer to M.S. as a victim, and the jury charge properly identified the complainant by her name and not as the victim. Furthermore, the jury was correctly instructed that the State's burden of proof was beyond a reasonable doubt. Appellant has not identified any authority where the prosecutor's use of the term victim was held to be improper, and we have found none. To the contrary, Texas courts have held that a prosecutor or witness's use of the word victim does not constitute reversible error. *See Gonzalez v. State,* No. 13-13-00427-CR, 2014 WL 4049800, at *16 (Tex. App.—Corpus Christi Aug. 14, 2014, pet. ref'd) (rejecting defendant's argument that trial counsel was deficient for not filing a motion in limine to prevent the State and its witnesses from referring to complainants as "victim"); *Cueva v. State*, 339 S.W.3d 839, 864 (Tex. App.—Corpus Christi 2011, pet. ref'd) (concluding term "victim" is relatively mild, especially when considering stronger terms that have not amounted to reversible errors— i.e. "slaughter," "sex slave," "butcher," and "this killer"); *Weatherly*, 283 S.W.3d at 486 (holding counsel was not ineffective for failing to object to use of the word "victim" by prosecutor and witnesses); *see also Cano v. State*, No. 14-06-00377-CR, 2007 WL 2872418, at *8 (Tex. App.—Houston [14th Dist.] Oct. 4, 2007, pet. ref'd) (mem. op., not designated for publication) (failure to object to use of term "victim" did not constitute ineffective assistance of counsel); *Johnson v. State*, No. 14–04–00406–CR, 2005 WL 3065872, at *4 (Tex. App.—Houston [14th Dist.] Nov. 15, 2005, pet. ref'd) (mem. op., not

designated for publication) (holding prosecutor's use of term "victim" to refer to complainant during voir dire did not constitute reversible error).

We conclude the trial court did not abuse it's discretion in overruling appellant's objection to the State's use of the word "victim". The jury was properly instructed regarding the State's burden of proof, and the trial court's ruling did not improperly shift the burden of proof to appellant. We overrule appellant's first point of error.

### III. HEARSAY TESTIMONY

By his second point, appellant argues "the trial court erred by allowing [Detective] Rangnow to testify to everything the complainant told him regarding all the alleged facts of the alleged sexual assault." Appellant maintains that the testimony was hearsay, and that the officer was not a proper "outcry" witness under Texas Code of Criminal Procedure article 38.072. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 (West, Westlaw through Ch. 46 2015 R.S.). The State concedes the officer's testimony constituted inadmissible hearsay, that the outcry statute did not apply, and that the testimony should not have been admitted into evidence. The State, however, argues that there was no harm because the testimony was cumulative of other, properly admitted evidence, including M.S.'s own testimony and statements made by M.S. to the SANE nurse.

#### A. Article 38.072

Hearsay is inadmissible unless it falls within a hearsay exception identified by the Rules of Evidence or is allowed by other rules prescribed by statute. *Sanchez v. State*, 354 S.W.3d 476, 484 (Tex. Crim. App. 2011). When a defendant is charged with certain offenses against a child under the age of 14 or a disabled individual, article 38.072 allows

6

into evidence the complainant's out-of-court statement so long as that statement is a description of the offense and is offered into evidence by the first adult that the complainant told of the offense. TEX. CODE CRIM. PROC. ANN. art. 38.072. The victim's out-of-court statement is commonly known as an "outcry," and an adult who testifies about the outcry is commonly known as an "outcry witness." *Sanchez*, 354 S.W.3d at 484.

M.S. was nineteen when she made her outcry to Detective Rangnow, and the record does not indicate that she was disabled as contemplated by article 38.072. Therefore, her outcry statements were not admissible under article 38.072. The State concedes Detective Rangnow is not a proper outcry witness and has not identified any other applicable hearsay exceptions. We conclude the trial court abused its discretion in permitting Detective Rangnow to testify concerning M.S.'s statements.[2]

## B. Harm Analysis

The erroneous admission of hearsay evidence is non-constitutional error that is subject to a harm analysis under rule 44.2(b) of the Texas Rules of Appellate Procedure. *See* TEX. R. APP. P. 44.2(b); *Duncan v. State*, 95 S.W.3d 669, 672 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). We disregard non-constitutional error unless it affects the substantial rights of the defendant. TEX. R. APP. P. 44.2(b). "A substantial right is

---

[2] Appellant argues in one sentence that "he was deprived of his full rights to the protection of the Confrontation Clause." However, appellant's failure to present argument or authorities in support of this assertion results in waiver of the issue. *See* TEX. R. APP. P. 38.1(h); *State v. Gonzales*, 855 S.W.2d 692, 697 (Tex. Crim. App. 1993); *Delapaz v. State*, 228 S.W.3d 183, 197 n.20 (Tex. App.—Dallas 2007, pet. ref'd). Furthermore, the declarant, M.S., testified at trial and was subject to cross examination. The Confrontation Clause is not offended if the declarant of a testimonial statement is available and later testifies at trial. *Crawford v. Washington*, 541 U.S. 36, 59 (2004); *see also Zuniga v. State*, No. 08–08–00314–CR, 2011 WL 1157555, at *5 (Tex. App.—El Paso Mar. 30, 2011, no pet.) (mem. op., not designation for publication); *Marzek v. State*, No. 06–10–00087–CR, 2011 WL 238347, at *2 (Tex. App.—Texarkana Jan. 25, 2011, no pet.) (mem. op., not designated for publication).

affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). In making this determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider the jury instructions, the State's theory and any defensive theories, whether the State emphasized the error, closing arguments, and even voir dire, if applicable. *Id.* at 355–56.

Detective Rangnow testified regarding M.S.'s statement concerning the alleged sexual assault. M.S. later testified at length, and in greater detail, on the same subject matter. The SANE nurse also testified, without objection, as to M.S.'s statements made during the nurse's examination. The erroneous admission of evidence will not result in reversal when other such evidence is received without objection, either before or after the complained-of ruling. *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998); *see* Tex. R. App. P. 44.2. This rule applies equally to the improper admission of a victim's outcry statement. *See Zarco v. State*, 210 S.W.3d 816, 833 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (holding erroneous admission of officer's testimony regarding child's outcry of sexual abuse was harmless in part because child "testified in detail about the abuse" and "detailed the same testimony [the officer] gave regarding the abuse" without objection); *Duncan*, 95 S.W.3d at 672 (holding improper admission of outcry testimony

8

was harmless error because similar testimony was admitted through complainant, pediatrician, and medical records).

M.S.'s outcry statement to Detective Rangnow did not provide any additional facts that were not otherwise established by the testimony of M.S. and the SANE nurse. After reviewing the record for harm, we conclude that the admission of the hearsay testimony constituted harmless error. Appellant's second issue is overruled.

## IV. EXPERT TESTIMONY

By his third issue, appellant argues "the trial court erred by allowing the SANE nurse to testify to whether [M.S.] appeared to be somebody who had consented" to the sexual assault. Specifically, appellant maintains the SANE nurse was not sufficiently qualified to give an expert opinion on this issue.

## A. Pertinent Facts

Jennifer Mumphord, a SANE nurse, testified in detail about her observations of M.S.'s injuries. Her report of the examination was admitted early in her testimony and she read the complainant's statement to her to the jury. Mumphord detailed the following injuries: bruising to the arm indicative of pressure marks from fingers; bruising to the legs and knees; a red mark underneath her breasts, and bruising and scratches on her backside. Mumphord testified that M.S. was too sore for her to insert a speculum to examine her cervix. Using a diagram of female genitalia, the nurse told the jury she observed extreme swelling to the clitoral hood, redness to her labia, and missing tissue from M.S.'s hymen. Following this testimony, the prosecutor asked Mumphord, "from your observations, examination of [M.S.], does this appear to be somebody who had

consented to have sexual assault?"   Appellant's counsel objected, stating "I don't believe she's qualified to answer that based on the foundation laid at this time."   The trial court overruled appellant's objection, and Mumphord answered, "Given the history that she gave me and given the findings it is consistent with sexual assault."

**B.   Standard of Review and Applicable Law**

We review a trial court's ruling on the admissibility of expert testimony for an abuse of discretion.   *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009); *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).   As with other types of evidentiary rulings, we will uphold the trial court's decision unless it lies outside the zone of reasonable disagreement.   *Layton*, 280 S.W.3d at 240.   Such rulings will rarely be disturbed by an appellate court.   *Vela v. State*, 209 S.W.3d 128, 136 (Tex. Crim. App. 2006); *Rodgers v. State*, 205 S.W.3d 525, 528–29 n. 9 (Tex. Crim. App. 2006).   Before reversing the trial court's decision, we must find the trial court's ruling was so clearly wrong as to lie outside the realm within which reasonable people might disagree.   *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008); *Green v. State*, 191 S.W.3d 888, 895 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).   Absent a clear abuse of that discretion, the trial court's decision to admit or exclude expert testimony will not be disturbed.   *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000).

Before admitting expert testimony under Rule 702 of the Texas Rules of Evidence, the trial court should determine that the expert is qualified, the opinion is reliable, and the evidence is relevant. *See* TEX. R. EVID. 702; *Vela*, 209 S.W.3d at 131.   These three requirements—qualification, reliability, and relevance—raise distinct questions and

10

issues. *Shaw v. State*, 329 S.W.3d 645, 655 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd); *see Vela*, 209 S.W.3d at 131.

Rule 702 allows a witness qualified by knowledge, skill, experience, training, or education to testify on scientific, technical, or other specialized subjects if the testimony would assist the trier of fact in understanding or determining a fact issue. TEX. R. EVID. 702. A person's specialized education, practical experience, study of technical works, or some combination thereof may provide her with the specialized knowledge that qualifies her to testify as an expert. *Wyatt*, 23 S.W.3d at 27; *Turner v. State*, 252 S.W.3d 571, 585 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). The evaluation of an expert's qualifications entails a two-step inquiry: first, whether the witness possesses sufficient background in a particular field; and second, whether that background goes to the matter on which the witness is to give an opinion. *Davis v. State*, 329 S.W.3d 798, 813 (Tex. Crim. App. 2010); *Vela*, 209 S.W.3d at 131 (citing *Broders v. Heise*, 924 S.W.2d 148, 153 (Tex. 1996)). The focus is on the fit between the subject matter at issue and the expert's familiarity with it. *Davis*, 329 S.W.3d at 813; *Vela*, 209 S.W.3d at 133. Because the spectrum of education, skill, and training is so wide, a trial court has great discretion in determining whether a witness possesses appropriate qualifications as an expert on a specific topic in a particular case. *Davis*, 329 S.W.3d at 813. To be qualified to give expert opinion testimony, the witness "must possess some additional knowledge or expertise beyond that possessed by the average person, but the gap need not necessarily be monumental." *Davis v. State*, 313 S.W.3d 317, 350 (Tex. Crim. App. 2010).

**C. Analysis**

11

Appellant challenges only the witness's qualification. Mumphord testified that she is a licensed registered nurse, and has practiced nursing for twenty years. She is employed by DeTar Hospital where she works in labor and delivery and as a SANE nurse. She has been certified as a SANE nurse by the State of Texas for eight years. As a SANE nurse, she is responsible for examining patients who have reported a sexual assault. Her examinations are conducted pursuant to standards promulgated by the State of Texas.

The aforementioned background provides a sufficient basis for Mumphord to testify as an expert in the field of sexual assault examinations. As a sexual assault nurse examiner, Mumphord was qualified to opine that, on the basis of her examination, M.S.'s injuries were consistent with sexual assault. *See Gregory v. State*, 56 S.W.3d 164, 179–80 (Tex. App.—Houston [14th Dist.] 2001, pet. dism'd) (nurses and other medical professionals may be qualified as experts in evaluating sexual assault cases, although a medical license or degree is not "the litmus test" for qualification as an expert); *see also Moore v. State*, No. 07-09-00363-CR, 2011 WL 3717058, at *4 (Tex. App.—Amarillo Aug. 23, 2011, no pet.) (mem. op., not designated for publication) (holding trial court could have reasonably concluded SANE nurse was qualified to render opinion on potential cause of victim's injuries given her considerable experience in evaluating sexual assault complainants and her personal examination of the victim); *Jernigan v. State*, No. 11-07-00028-CR, 2008 WL 3845457, at *2 (Tex. App.—Eastland Aug. 14, 2008, no pet.) (mem. op., not designated for publication) (concluding SANE nurse was qualified to provide the following opinion: "The findings . . . from the examination I gave her are consistent with

12

her history."); *Chevez v. State*, No. 05-98-01904-CR, 2000 WL 1618459, at *3 (Tex. App.—Dallas Oct. 31, 2000, pet. ref'd) (mem. op., not designated for publication) (concluding trial court did not abuse its discretion in determining SANE nurse was qualified to render expert opinion concerning causation of victim's injuries); *Kelly v. State*, No. 11-98-00230-CR, 1999 WL 33748041, at *2 (Tex. App.—Eastland Nov. 18, 1999, no pet.) (mem. op., not designated for publication) (holding trial court did not abuse its discretion in allowing SANE nurse to testify as an expert witness in a sexual assault case).

We conclude the trial court did not abuse its discretion in allowing Mumphord to testify whether M.S.'s injuries and history were consistent with a sexual assault. Appellant's third point is overruled.

## V. CONCLUSION

We affirm the judgment of the trial court.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
3rd day of September, 2015.